IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FRINDAR MEGASOFT INTERNATIONAL, INC., | § § § § | |
| v. | § | A-06-CA-600 LY |
| TELCORDIA TECHNOLOGIES, INC. | § § § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff's Motion to Compel Arbitration of Defendant's Counterclaim, filed September 14, 2006 (Clerk's Doc. No. 8); Defendant Telcordia Technologies, Inc.'s Motion to Compel Arbitration of all Claims and to Dismiss or Stay Proceeding and Response to Plaintiff's Motion to Compel Arbitration of Defendant's Counterclaim, filed September 28, 2006 (Clerk's Doc. No. 10); Plaintiff's Response to Defendant Telcordia Technologies, Inc.'s Motion to Compel Arbitration of all Claims and to Dismiss or Stay Proceeding, filed October 12, 2006 (Clerk's Doc. No. 12); and Defendant Telcordia Technologies, Inc.'s Reply to Plaintiff's Response to Motion to Compel Arbitration of all Claims and to Dismiss or Stay Proceeding, filed October 20, 2006 (Clerk's Doc. No. 14).  The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.  BACKGROUND

On June 27, 2006, Frindar Megasoft International, Inc. ("Frindar") brought suit against Telcordia Technologies, Inc. ("Telcordia") in a Texas state district court alleging business disparagement and tortious interference with business relations.  Frindar claims that Telcordia made false statements to Saskatchewan Telecommunications ("Sasktel") – a customer of Frindar's – about Frindar's business practices.  Telcordia removed the suit to federal court and brought counterclaims against Frindar for breach of contract under two agreements it had with Frindar (the Value Added Reseller ("VAR") Agreement[1] and the Professional Services Agreement) alleging that Frindar has not paid certain invoices.

Section 13.11 of the VAR Agreement contains an arbitration provision providing that:

> All controversies or claims arising out of or relating to this Agreement or breach thereof, except for claims that have been waived hereunder shall, unless the parties agree otherwise, be decided by arbitration conducted in New Jersey by a single neutral expert arbitrator, in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

*See* Plaintiff's Motion to Compel Arbitration, Exh. A.

Frindar's initial Motion was simply to compel arbitration of Telcordia's breach of contract counterclaims.  In its Response, Telcordia agreed that its breach of contract claims fell within the scope of the arbitration clause, but, in addition, moved for this Court to compel arbitration of Frindar's tort claims.  In its Reply, Frindar points out that, given this response, there is no longer a dispute as to whether the parties should arbitrate the breach of contract claims, but it disputes that its tort causes of action are arbitrable.

---

[1] Under the VAR Agreement, Telcordia appointed Frindar as a non-exclusive distributor and value-added reseller of one of Telcordia's software products.  Additionally, under that agreement, Telcordia was to provide Frindar with support services for the software.

2

## II.    DISCUSSION

**A.    Choice of Law**

As an initial matter, determining whether Frindar's state law tort claims are arbitrable under the VAR Agreement requires that the Court examine the elements of the Plaintiff's claims, which in turn requires determining which state's law will govern those claims.[2] A federal court sitting in diversity jurisdiction applies state substantive law to a plaintiff's state law claims. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938). As a threshold issue, a federal court sitting in diversity must decide which state's substantive law to apply. *See, e.g., R. R. Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005). Generally, in a diversity case, a federal court applies the substantive law of the state in which it sits, including that state's choice of law rules. *See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). When determining which state's law to apply, Texas courts use the most significant relationship choice of law analysis that is outlined in the Restatement (Second) of Conflict of Laws. *R. R. Mgmt. Co., L.L.C.*, 428 F.3d 214, 222 (5th Cir. 2005); *see* RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971).

Under the Restatement, the general principles the court considers are: (1) the needs of the interstate and international systems, (2) the relevant policies of the forum, (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) certainty, predictability, and uniformity of result, and (7) ease in the

---

[2]Telcordia argues in a brief footnote to its Reply that New Jersey law applies to the claims, based on the fact that New Jersey was the source of the products, the contractual choice of law provision provides for application of New Jersey law, any arbitration must take place in New Jersey, any award is enforceable in New Jersey courts, and the lack of a clear connection to Texas. *See* Reply at 2 n.2

determination and application of the law to be applied. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971). The specific facts to be considered in applying these principles include: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. *Id.* § 145(2). In determining the relative importance of these factors Texas courts are guided by § 156 of the Restatement, *Bridas Corp. V. Unocal Corp.*, 16 S.W.3d 893, 897 (Tex. App. – Houston [14th Dist.] 2000, pet. denied), which in turn provides in part that "the applicable law will usually be the local law of the state where the injury occurred." *Id.* at § 156(2).

The Court does not intend at this time to do a full conflicts of law analysis, as that issue has not been briefed by the parties. It would appear, however, that either New Jersey or Texas law would apply to the Plaintiff's tort claims. As the states of domicile of the two parties, it would appear that the needs of comity and interstate systems would arguably support application of either Texas or New Jersey law. The parties' expectations arguably point to the application of New Jersey law, as the VAR Agreement provides that the parties' agreement is to be construed in accordance with New Jersey law. The other factors of § 6 of the Restatement appear (at this early stage at least) to be neutral as between Texas and New Jersey law. With regard to the § 145 factors, the injury in this case (the harm done to Plaintiff's business relationship with Sasktel) would appear to have occurred in Texas, Plaintiff's domicile.[3] With regard to the remaining factors of § 145, the conduct causing the injury occurred in New Jersey or Canada (or both), the parties are domiciled,

---

[3] As noted earlier, the place of the injury is the most important of the four § 145 factors under Texas law.

incorporated, and have their places of business in Texas, Virginia, Delaware, and New Jersey, and the relationship between the parties was centered in Texas and New Jersey. Because neither Texas nor New Jersey law is clearly applicable, at this stage of the proceedings, the Court will analyze Plaintiff's claims under both states' laws in determining if Plaintiff's claims are sufficiently "related" to the contract as to be within the scope of the arbitration agreement.

**B.     Arbitrability of Tort Claims**

Case law establishes without dispute that there is a national policy favoring arbitration, *see, e.g., Volt Info. Sciences v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989), and because of this policy, any doubts concerning the scope of coverage of an arbitration clause in a contract are resolved in favor of arbitration. *AT&T Technologies, Inc. v. Communication Workers of Am.*, 475 U.S. 643, 650 (1986). That is to say, arbitration should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation which would cover the dispute at issue. *Safer v. Nelson Financial Group, Inc.*, 422 F.3d 289, 294 (5th Cir. 2005).

In adjudicating a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-step inquiry. The first step is to determine whether the parties agreed to arbitrate the dispute in question. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The second step is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* at 628. Because this does not present itself as a question in this case, the inquiry will be dependent on the first step. That step itself involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.

*Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996); *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994); *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990). When deciding whether the parties agreed to arbitrate the dispute in question, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Perry v. Thomas*, 482 U.S. 483, 492-93 n. 9 (1987). Because both parties agree that there is a valid arbitration agreement, the only issue in this case is whether Frindar's tort claims fall within the scope of the Arbitration Clause. This question, in turn, will require the Court to consider the scope of the Arbitration Clause itself and the nature of the dispute at issue.

      Construing an arbitration agreement under the FAA requires the court to characterize the clause as "broad" or "narrow." *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 755 (5th Cir.1993). If the court finds that the clause is broad, then any dispute between the parties falls within the scope of the clause if it is "connected with" or "related to" the contract. *Id*; *see also Battaglia v. McKendry*, 233 F.3d 720, 724-25 (3d Cir. 2000). The arbitration clause of the VAR Agreement – which requires the arbitration of any dispute "arising out of or relating to" the agreement – is what courts have called a "broad" clause. *See Prima Paint Corp v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) ("arising out of or relating to" language "easily broad enough" to encompass claims at issue); *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 165 (5th Cir. 1998). When this is the case "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Litton Financial Printing Div. v. NLRB*, 501 U.S. 190, 210 (1991).

However, even broad arbitration clauses do not have an infinite reach. New Jersey law has given "broad clauses" this contour: arbitrability of a particular claim depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause. *Jansen v. Salomon Smith Barney, Inc.*, 776 A.2d 816, 819 (N.J. Super. Ct. App. Civ. 2001) (construing "arising out of or relating to" arbitration clause); *Wasserstein v. Kovatch*, 618 A.2d 886 (N.J. Super. App. Div. 1993) (holding that court looks to relationship of claim to contract, and that it does not matter what legal theory claim is couched in). Texas law puts this gloss on broad arbitration clauses: A dispute "arises out of or relates to" a contract if the legal claim underlying the dispute could not be maintained without reference to the contract. *Tittle v. Enron Corp.*, 463 F.3d 410, 422 (5th Cir. 2006); *see also Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 141 F.3d 243, 250 (5th Cir. 1998) (noting that a claim does not "arise out of or relate to" a contract if the claim "is completely independent of the contract and could be maintained without reference to a contract").

### 1. Tortious Interference

Frindar's petition contains two claims: tortious interference with its contract with Sasktel, and business disparagement. Under New Jersey law, the elements a tortious interference plaintiff must prove are: (1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage. *Dello Russo v. Nagel*, 817 A.2d 426, 434 (N.J. Super. App. Div. 2003). New Jersey law fleshes this out: "Interference with a contract is intentional 'if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.' *Id.* (citing RESTATEMENT (SECOND) TORTS,

§ 766A, comment e (1977). *Id.* One of the elements of tortious interference under New Jersey law is proof that the interference was done intentionally and with "malice." *Id.* Malice is defined to mean that the harm was inflicted intentionally and without justification or excuse. *Id.* Demonstrating that the defendant acted "to advance [its] own interest and financial position," does not establish the necessary malice or wrongful conduct. *Id.* (citing *Sandler v. Lawn-A-Mat Chem. & Equip. Corp.*, 358 A.2d 805 (N.J. Super. App. Div. 1976). Thus, it is generally recognized that a party may not be held liable for tortious interference for merely providing truthful information to one of the contracting parties. *East Penn Sanitation, Inc. v. Grinnell Haulers, Inc.*, 682 A.2d 1207, 1218 (N.J. Super. App. Div. 1989) (citing *C.R. Bard, Inc. v. Wordtronics Corp.*, 561 A.2d 694 (N.J. Super. Ct. Law Div. 1989), and RESTATEMENT (SECOND) OF TORTS § 772(a) (1977), and Wisconsin and Utah cases for proposition).

As for a tortious interference claim under Texas law, the elements are: (1) the existence of a contract subject to interference; (2) the occurrence of an act of interference that was willful and intentional; (3) the act was a proximate cause of the claimant's damage; and (4) actual damage or loss occurred. *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 856-57 (Tex. App. – Houston [1st Dist.] 2001, rev. denied). Even if the plaintiff establishes all of the elements of a claim for tortious interference with a contract, the defendant may avoid liability if it establishes the elements of the defense of justification. *Id.* A party is justified in interfering with the contractual relations of another if: (1) it acts in the bona fide exercise of its own rights, or (2) the interfering party has an equal or superior right in the subject matter to that of the party to the contract. *Id.* Justification is established as a matter of law when the defendant's acts are merely done in the defendant's exercise of its own contractual rights, regardless of motive. *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203,

211 (Tex.1996). Thus, while the lack of justification is an element of the claim in New Jersey, it is an affirmative defense under Texas law. Accordingly, under either Texas or New Jersey law, whether the interference was justified will be a necessary consideration in resolving Frindar's claim.

Telcordia argues that because justification is a relevant factor to consider under either states' law, the substance of Frindar's tortious interference claim bears a tight relationship to the VAR Agreement. Frindar's Original Petition, Telcordia points out, alleged that Telcordia interfered with Frindar's contract with Sasktel by representing that Frindar "no longer will have any access to further versions of Telcordia's products." *See* Defendant's Reply at p. 3 (citing to Plaintiff's Original Petition, ¶ 10). Given this, Telcordia's argument goes, Frindar would have to offer the contract into evidence in order to prove up its cause of action.

For its part, Frindar makes two primary arguments.[4] First, it argues that a claim is arbitrable "only if reference to the agreement is required to maintain the action." *See* Plaintiff's Response at p. 3 (Clerk's Doc. No. 12). Because Frindar claims that it could try its tortious interference case without reference to the VAR Agreement, the tort claim does not "relate to" the VAR Agreement. Frindar's second argument is that the logical extension of Telcordia's argument means that if Telcordia sent some underworld heavies to "break the kneecaps of Frindar's president and 'redecorate' Frindar's offices to persuade Frindar to resolve the billing dispute, the Court would be required to find the tort claims for the personal injuries and property damage are subject to

---

[4] Frindar cites a Ninth Circuit case that is unpersuasive because, although the court there did find the tortious interference claim not subject to arbitration, the arbitration clause in that case was considerably narrower (and different). *See United Commc'n Hub, Inc. v. Qwest Commc'n, Inc.*, 46 Fed. Appx. 412, 413 (9th Cir. 2002) (concluding that arbitration clause that applied to matters relating to invoices and balances did not cover claims such as interference with party's customer relationship).

arbitration." *See* Plaintiff's Response at p. 6 (Clerk's Doc. No. 12). This, needless to say, would be the wrong result.

Notwithstanding Frindar's attempt at humourous analogy, the Court is not persuaded by Frindar's arguments. It must be remembered that Frindar purchased software from Telcordia under a distribution agreement, and then intended to, or in fact did, resell that software to Sasktel. As the manufacturer of the software for which Sasktel would be the end-user, Telcordia has a financial and business interest in communicating with Sasktel about the software and its distributor. Telcordia claims that it was only passing on truthful information to Sasktel about Frindar's alleged delinquency in paying its bills. If truth is a defense – a justification – to tortious interference, *see East Penn Sanitation*, 682 A.2d at 1218, then it is difficult to see how Frindar could prove that Telcordia's interference was done with "malice" (*i.e.*, that the harm was inflicted intentionally and without justification or excuse) without the contract being offered into evidence, whether by Frindar *or* Telcordia. Telcordia would certainly offer the contract into evidence as foundation, to raise as a defense its reasons (or "justification") for communicating with Sasktel. This analysis bleeds into the affirmative defense of justification under Texas law. In order to assert its affirmative defense of justification  – *e.g,* acting in vindication of its rights to communicate with the end-user of its products so as to protect its business reputation – the contract would be relevant evidence.

In summary, under either Texas or New Jersey law, the VAR Agreement will be relevant to the resolution of Frindar's tortious interference claim. Given the strong policy in favor of arbitration, and the requirement that this Court construe arbitration clauses broadly, the Court must conclude that Frindar's tortious interference claim "relates to" the VAR Agreement and is therefore within the scope of that contract's arbitration clause.

### 2. Business Disparagement

The same reasoning applies with even greater force to the business disparagement claim. Under New Jersey law, the elements of trade disparagement (the New Jersey equivalent to business disparagement in Texas) are: (1) publication; (2) with malice; (3) of false allegations concerning its property, product or business, and (4) special damages, *i.e.* pecuniary harm. *Mayflower Transit, L.L.C. v. Prince*, 314 F.Supp.2d 362, 378 (D.N.J. 2004). Under Texas law, the elements of business disparagement are: (1) publication of disparaging words by the defendant, (2) falsity, (3) malice, (4) lack of privilege, and (5) special damages. *Forbes v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 171 (Tex. 2003) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex.1987)). While the tort is similar to defamation, more stringent requirements apply to a business disparagement plaintiff than a defamation plaintiff. For example, "[r]egarding falsity, the common law presumed the defamatory statement to be false and truth was a defensive matter. The plaintiff in a business disparagement claim, however, must plead and prove the falsity of the statement as part of his cause of action." *Hurlbut*, 749 S.W.2d at 766.

Under both Texas and New Jersey law, then, Frindar must prove that the statements Telcordia allegedly made to Sasktel were false. Given that the truth of the allegations is an explicit element of the trade disparagement cause of action, the relationship between the contract and the trade disparagement claim is substantial. This is so because Frindar's alleged failure to pay – the gravamen of both the breach of contract and tort claims – has, as its foundation, the contract between Frindar and Telcordia.

In the end, given that the Supreme Court has said "that an order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration

11

clause is not susceptible of an interpretation that covers the asserted dispute," *Commc'n Workers of Am.*, 475 U.S. at 650, the Court must conclude that Frindar's tort claims bear enough of a relationship to the VAR Agreement to fall within the broad arbitration clause at issue.

## IV. RECOMMENDATION

Based on the above, the Magistrate Court **RECOMMENDS** that the District Court **GRANT** Defendant Telcordia's Motion to Compel Arbitration of all Claims and to Dismiss or Stay Proceedings. The Court **FURTHER RECOMMENDS** that the District Court enter an order compelling the parties to arbitrate their claims. **FINALLY**, the Court **RECOMMENDS** that the District Court **DISMISS** this case **WITHOUT PREJUDICE** to the parties arbitrating their disputes as required by the parties' agreement.[5]

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

---

[5]When all of the claims in a case are being sent to arbitration, dismissal is appropriate. *Alfrod v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1994).

District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 26th day of October, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE